**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **FERRO CORPORATION,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  No. 4:08CV286-DJS |
| | ) |
| **SOLUTIA INC.,** | ) |
| | ) |
| Defendant. | ) |

## ORDER

Now before the Court is plaintiff Ferro Corporation's motion to alter or amend judgment and for leave to file an amended complaint [Doc. #38]. This matter has been fully briefed and is ready for disposition.

Plaintiff brings it motion pursuant to Rules 59(e) and 15(a)(2) of the Federal Rules of Civil Procedure. Rule 59(e) allows a party to move a court to alter or amend a judgment that has been entered. "Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence." Lowry ex rel. Crow v. Watson Chapel Sch. Dist., 540 F.3d 752, 761 (8th Cir. 2008). However, "a Rule 59(e) motion 'does not allow arguments or evidence to be presented after judgment when the argument or evidence could have been presented earlier.'" Anjulo-Lopez v. United States, 541 F.3d 814, 818 n.3 (8th Cir. 2008) (quoting McAllister v. Transamerica Occidental Life Ins. Co., 325 F.3d 997, 1003 n.4 (8th Cir. 2003)); see also McGuire v. Davidson Mfg. Corp., 398 F.3d 1005, 1009 (8th Cir. 2005)

(finding that plaintiff's "argument is waived because it was not raised until the Rule 59(e) Motion to Reconsider").

Although leave to amend a complaint should be granted liberally when the motion is made pretrial, "different considerations apply to motions filed after dismissal." <u>Briehl v. Gen. Motors Corp.</u>, 172 F.3d 623, 629 (8th Cir. 1999) (citing <u>Dorn v. State Bank of Stella</u>, 767 F.2d 442, 443 (8th Cir. 1985)). "A district court does not abuse its discretion in denying a plaintiff leave to amend the pleadings to change the theory of their case after the complaint has been dismissed under Rule 12(b)(6)." <u>Id.</u>

On June 21, 2000, plaintiff and defendant Solutia Inc. entered into an asset purchase agreement that, among other things, contained defendant's agreement to convey to plaintiff certain real properties located in the State of New Jersey.[1] One of the properties defendant agreed to convey to plaintiff is a riparian grant known as the Riparian Property, and another is a contiguous parcel of land known as the Uplands Property. Both properties are located in the County of Gloucester, Township of Logan, New Jersey. The Uplands Property is part of a larger tract owned by defendant, which the parties' agreement required to be subdivided prior to conveyance to plaintiff. To this end, defendant agreed to obtain approval for subdivision of the Uplands Property into three separate lots. Further, defendant agreed to use reasonable commercial efforts to secure the Uplands Property subdivision.

---

[1] The Court set forth a thorough statement of the facts of this case in its December 5, 2008, order, and incorporates those facts into this order.

Defendant agreed to convey to plaintiff the Riparian Property by quitclaim deed and the Uplands Property by special warranty deed contemporaneously.

However, the parties' agreement contemplated the possibility that the subdivision would not occur. In that event, the parties' agreement contained the following language:

> 10.7.4. Purchaser and Seller agree that they will use their reasonable commercial efforts to cause the Subdivision to occur as soon as is reasonably practical, with the parties using their commercially reasonable efforts to cause the Subdivision to occur prior to the Closing Date. Seller and Purchaser acknowledge and agree that the Subdivision may not occur before or on the Closing Date, and the failure to so occur prior to or at such time shall not give rise to a reason by either Purchaser or Seller to fail to consummate the transactions contemplated hereby or a breach by either Seller or Purchaser or [sic] its obligations hereunder unless a party does not use its commercially reasonable efforts to cause the Subdivision to occur. <u>Purchaser and Seller also acknowledge and agree that the Subdivision may never occur, whether due to the failure to obtain governmental approval or otherwise, and such failure shall not give rise to liability by either Purchaser or Seller to the other party unless a party does not use its commercially reasonable efforts to cause the Subdivision to occur. If the Subdivision does not occur on or before June 30, 2001, then the parties agree that no further action by either Purchaser or Seller shall be required in order to effectuate the Subdivision, and the lease for the Delaware River Site entered into at Closing will be modified to 99 years</u> so that the Purchaser and Seller shall be in the same position as if title to the real estate at the Delaware River Plant had been transferred to Purchaser (e.g. with Purchaser having all of the obligations of an owner of the leased premises, including maintenance, utilities and taxes).

Doc. #23-3, p. 30 (emphasis added); see also Doc. #27, p. 4.

To date, defendant has not transferred title of either the Riparian Property or the Uplands Property to plaintiff.[2] Plaintiff filed its complaint on February 29, 2008, which asserted twenty claims for relief against defendant. Essentially, plaintiff alleged that defendant refused and failed to use commercially reasonable efforts to resolve all environmental issues, perfect the subdivision, and execute and deliver to plaintiff the properties, despite plaintiff's repeated demands to do so. Plaintiff further alleged that defendant's breach of its obligations regarding the properties occurred <u>at the earliest in August 2002</u>, and as recently as late 2007 or early 2008, at which time defendant indicated its intention never to voluntarily pursue the subdivision and transfer the properties to plaintiff. Doc. #1.

On April 22, 2008, defendant filed a motion to dismiss plaintiff's complaint. Defendant argued that the parties' agreement clearly imposed an obligation to use commercially reasonable efforts to effectuate the property transfer until June 30, 2001, at which time such an obligation ceased. Defendant argued that, considering plaintiff's allegations that defendant's breaches occurred at the earliest in August of 2002, plaintiff failed to allege facts sufficient to support its action because, as of August of 2002, defendant was not under any duty, allegedly

---

[2]The Court notes that plaintiff does <u>not</u> allege that defendant failed to enter into a ninety-nine year lease with plaintiff as required by the agreement in the event no subdivision occurred by June 30, 2001.

breached, to perform. In opposition to defendant's motion, plaintiff argued that the June 30, 2001, date was applicable only if defendant had used commercially reasonable efforts prior to June 30, 2001. Plaintiff argued that its complaint contained allegations regarding defendant's failure, prior to June 30, 2001, to use commercially reasonable efforts to effectuate a transfer, which extended defendant's transfer obligations past June 30, 2001. Plaintiff further argued that, as early as August of 2002, defendant's failure to transfer the properties constituted a breach of the parties' agreement.

On December 5, 2008, the Court granted defendant's motion to dismiss, and entered judgment in defendant's favor. See Docs. #36, 37. In its order, the Court found that defendant's breach of its obligations could not have been, as plaintiff alleged, at the earliest in August of 2002. This is because without a pre-June 30, 2001 breach, defendant's contractual obligations with regard to transferring the properties expired on June 30, 2001. The Court further stated that plaintiff's express allegations contained in its complaint (that defendant's breach of its obligations occurred at the earliest in August of 2002), contravened plaintiff's argument opposing dismissal (that the Court should find plaintiff's general allegations regarding defendant's pre-June 30, 2001, conduct as sufficiently alleging that defendant failed to fulfill its obligations imposed by the parties' agreement). Accordingly, the Court found that plaintiff alleged a breach that occurred after

the obligation to perform expired, and consequently had pleaded itself out of court.

As stated above, plaintiff, <u>in opposition to defendant's motion to dismiss</u>, argued that defendant failed to use commercially reasonable efforts before June 30, 2001, which extended the transfer-by date and allowed defendant to breach its obligations in August of 2002 when defendant did not transfer the properties. Plaintiff <u>now</u> argues that the parties agreed to extend the June 30, 2001, transfer-by date.[3] That is, plaintiff now argues that in late 2000/early 2001, the parties affirmatively agreed to set aside the transfer-by date and focus on other contract issues, and recommence the transfer efforts twelve to eighteen months later, which plaintiff now argues is well past June 30, 2001. As this argument was available to plaintiff before the Court entered judgment in defendant's favor, and as plaintiff failed to advance this argument in opposition to defendant's motion to dismiss, the Court will not now, pursuant to plaintiff's Rule 59(e) motion, consider plaintiff's argument. Indeed, a Rule 59(e) motion does

---

[3]Plaintiff's memorandum in opposition to defendant's motion to dismiss makes <u>no</u> mention of an agreement between the parties that extended the June 30 transfer-by date. Furthermore, plaintiff made statements in its memorandum in opposition that appear to contravene such an assertion. For instance, the Court notes that plaintiff stated that "[t]his [June 30, 2001] date was to take effect only if [defendant] engaged in commercially reasonable efforts to effect the property transfers by then." Doc. #27, p. 3. If there was an agreement to extend the June 30 transfer-by date (as plaintiff now argues), then the June 30 transfer-by date would <u>not</u> take effect, even if the parties had used commercially reasonable efforts to effect the property transfers by then.

not allow arguments to be presented after judgment when that argument could have been presented earlier.

Plaintiff also sets forth the same or similar arguments advanced to oppose defendant's motion to dismiss, and asks the Court to reconsider its December 5, 2008, order. The Court has already considered these arguments and will not amend its ruling.

Finally, plaintiff asks the Court to allow it to amend its complaint so as to cure the defects the Court found warranted dismissal of its action. As the Court herein finds that its December 5, 2008, judgment should not be set aside, altered, or amended, it will not allow plaintiff to amend its complaint. See Briehl, 172 F.3d at 629 ("The plaintiff must bear the consequences of waiting to address the court's rulings post-judgment.").[4]

For the above stated reasons,

---

[4] Plaintiff also argues that, before judgment was entered, it asked the Court to be allowed to amend its complaint. That is, plaintiff, in its memorandum in opposition to defendant's motion to dismiss, stated: "Should the Court give credence to any of [defendant's] arguments, [plaintiff] respectfully requests leave to amend its Complaint." Doc. #27, p. 15 n.8. Defendant's memorandum in opposition was not styled as a motion, nor was it accompanied by a memorandum in support as required by this district's local rules. If plaintiff had moved to amend its complaint before the Court's ruling (rather than stating it would wait and see if the Court would give defendant's arguments any credence), such a motion would have been considered by the Court. Plaintiff, instead, adopted a wait and see strategy, and may not now be afforded the benefit of the Court's opinion. See U.S. Nat. Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 446 (1993) (stating that "a federal court lacks the power to render advisory opinions" (quotation omitted)).

**IT IS HEREBY ORDERED** that plaintiff Ferro Corporation's motion to alter or amend judgment and for leave to file an amended complaint [Doc. #38] is denied.

Dated this __29th__ day of January, 2009.

__/s/Donald J. Stohr__
UNITED STATES DISTRICT JUDGE
